UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

| | | |
|---|---|---|
| EDWARD N. CARLTON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:04-cv-708 |
| | ) | |
| v. | ) | Honorable David W. McKeague |
| | ) | |
| ELLEN MAY SMITH et al., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983.

Plaintiff has paid the $150.00 filing fee.[1]  Under the Prison Litigation Reform Act, PUB. L. NO. 104-

134, 110 STAT. 1321 (1996) ("PLRA"), "no action shall be brought with respect to prison conditions

. . . until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

Because Plaintiff has failed to demonstrate exhaustion of available administrative remedies as to

each of his claims, the Court will dismiss his complaint without prejudice.

### Discussion

I.      Factual allegations

Plaintiff is currently incarcerated in the Southern Michigan Correctional Facility, but

the events giving rise to his complaint occurred while he was incarcerated in the Lakeland

Correctional Facility (LCF).  Plaintiff sues the following LCF employees:  Food Services Supervisor

---

[1]The Court denied Plaintiff leave to proceed in forma pauperis because he has "three strikes" within the meaning of 28 U.S.C. § 1915(g).

Ellen May Smith, Assistant Food Services Director Gregory Hissong, Hearing Officer Martin Palus, Deputy Warden Bonita Hoffner, Warden Carol Howes and Resident Unit Manager Mary Cooley.

Plaintiff was assigned to work in Food Services at LCF.  On February 27, 2001, Defendant Hissong took Plaintiff's bonus for allegedly smoking in the bathroom.  As of April 3, 1998, it is the policy of the food services department that a prisoner caught smoking on his food service assignment is subject to the loss of his bonus and placed on a 30-day probation.  *See* Compl., Exhibit A-3.  Plaintiff denied that he was smoking and claims that Hissong took his bonus in retaliation for  a previous grievance Plaintiff filed against Hissong for failing to pay him for 130 hours of overtime.

Food Services Supervisor Ellen Smith wrote a major misconduct report against Plaintiff on October 23, 2001, for attempted theft.  According to the misconduct report, Smith saw Plaintiff go into the cooler without authorization.  *See* Compl., Exhibit B-1.  When he came out, Smith asked him what he was doing.  Plaintiff responded that he was getting milk for the lay-in food trays.  When Smith asked Plaintiff what else he had, he said, "nothing."  After Smith told Plaintiff to leave the cooler, she saw him go back in.  Smith allegedly observed Plaintiff take hot dogs and an onion out of his pants and return them to a rack in the cooler.  Plaintiff denied that he attempted to steal food from the cooler.  He claims that Smith brought the false charge in retaliation for his filing of grievances against her supervisor, Gregory Hissong.

Defendant Hearing Officer Martin Palus conducted the misconduct hearing on November 14, 2001.  *See* Compl., Exhibit C.  Plaintiff claims that he was denied a video tape to show that Smith had her back to the cooler and could not have seen him remove the food from his pants. Plaintiff further claims that the hearing was not held within fourteen days of the charge in

violation of department policy.  Palus found Plaintiff guilty of the offense of "Attempted Theft; Possession of Stolen Property," and sentenced him to seven days of toplock from November 16 to 23, 2001.  While Plaintiff was convicted of only one charge, he asserts that Palus included an additional charge of Possession of Stolen Property.  Plaintiff asserts that he was not given notice in the misconduct report of any charge other than attempted theft.  Plaintiff alleges that he wrote a letter to Warden Howes on October 25, 2001, complaining of the false misconduct charge, but she failed to take any remedial action.

Plaintiff further alleges that on December 3, 2001, he received a memorandum from Defendant Bonita Hoffner notifying him that pursuant to MICH. DEP'T OF CORR., Policy Directive 05.01.100, "Institutional Program Classification of Prisoners," he was being placed on work/assignment restriction as the result of his termination from his job assignment in Food Services.  The restriction was imposed for a period of thirty days, beginning December 4, 2001. Under the restriction, Plaintiff could not participate in the following activities between the hours of 0800 and 1600, Monday through Friday:  yard, weight pit, recreation room/building, TV/quiet rooms, general library, telephone, barber shop, or any other leisure time activity offered to prisoners. Plaintiff claims that his placement on restriction constituted "double punishment" for his misconduct conviction for which he had already served seven days of toplock.  Plaintiff contends that the restriction was not authorized under Policy Directive 05.01.100, and was part of the ongoing conspiracy to harass and retaliate against him.

On June 15, 2004, Defendant Mary Cooley allegedly ordered Officer Holt to seize all of Plaintiff's hobby craft materials and move him to the observation cell. Plaintiff claims that the temperature in the windowless cell was in excess of 100 degrees.

Plaintiff claims that on October 20, 2004, Defendant Ellen Smith offered inmate Ramone a better job in Food Services if he would get Plaintiff "out of the way." Plaintiff alleges that he was assaulted by inmate Ramone and suffered a badly blackened eye and lacerations that required stitches. The MDOC refused Plaintiff's request to press charges and transferred him the Southern Michigan Correctional Facility.

For relief, Plaintiff seeks $50,000 from each of the Defendants.

II.        Exhaustion of administrative remedies

Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. A district court must enforce the exhaustion requirement *sua sponte. Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998); *accord Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999).

A prisoner must allege and show that he has exhausted all available administrative remedies and should attach to his § 1983 complaint the administrative decision disposing of his complaint, if the decision is available.[2] *Brown*, 139 F.3d at 1104. In the absence of written documentation, the prisoner must describe with specificity the administrative proceeding and its outcome so that the Court may determine what claims, if any, have been exhausted. *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000). In addition, a prisoner must specifically mention the

---

[2]To assist prisoners in meeting this requirement, this Court advises prisoners to attach copies of documents evidencing exhaustion in its form complaint. The form complaint, which is required by local rule, is disseminated to all the prisons. *See* W.D. MICH. LCIVR 5.6(a). Plaintiff used the form complaint in this action.

involved parties in the grievance to alert the prison officials to the problems so that the prison has a chance to address the claims before they reach federal court. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001); *Thomas v. Woolum*, 337 F.3d 720, 735 (6th Cir. 2003); *Vandiver v. Martin*, No. 02-1338, 2002 WL 31166925, at \*2 (6th Cir. Sept. 27, 2002) ("The issues [plaintiff] may raise, and the defendants he may name, in his lawsuit are limited to the specific issues raised, and the specific individuals mentioned, in his grievance.").

The Michigan Department of Corrections provides prisoners with a three-step prison grievance process. Prisoners may generally grieve "alleged violations of policy and procedure or unsatisfactory conditions of confinement." *See* MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ E(effective 4/28/03). However, the policy lists certain matters that are non-grievable. For example, decisions made in hearings conducted by the office of policy and hearings, hearings and appeals division, and minor misconduct hearings are nongrievable. Policy Directive 03.02.130, ¶ F(1). Because decisions made in a misconduct hearing are non-grievable, the Court will consider exhausted Plaintiff's claims against Defendants Smith and Palus arising from his misconduct conviction.

Plaintiff filed four grievances relating to the claims set forth in the complaint. Plaintiff filed a Step I Grievance on March 2, 2001, claiming that Defendant Hissong took his bonus in retaliation for a previous grievance Plaintiff filed against Hissong for failing to pay Plaintiff for 130 hours of over-time. *See* LCF-01-03-0361-17B, Exhibit A-1. Plaintiff appealed his grievance to Step III. *See* LCF-01-03-0361-17B, Exhibits A-2 and A-3. Therefore, Plaintiff exhausted his claim of retaliation against Defendant Hissong.

On December 10, 2001, Plaintiff wrote a grievance against Defendant Hoffner concerning his placement on restriction following his termination from his food services work

assignment.  *See* LCF-01-12-1285-02G, Exhibit D-3.  Plaintiff asserted that the restriction was an

unauthorized "second punishment" for his attempted theft misconduct.  Plaintiff appealed his

misconduct to Step III.  *See* LCF-01-12-1285-02G, Exhibit D-4.  Plaintiff, therefore, also exhausted

his claim against Defendant Hoffner arising from his placement on restriction.

Plaintiff provides the Court with two additional Step II and III grievance appeals,

LCF-03-07-0511-28Z  and  LCF-03-07-0564-28A.    Grievance  LCF-03-07-0511-28Z  concerns

Plaintiff's placement in the observation cube on June 28, 2003, where the temperature was in excess

of 100 degrees.  Grievance LCF-03-07-0564-28A concerns Plaintiff's request to be moved to another

building to escape ongoing harassment and retaliation by prison staff.  In order to properly exhaust

Michigan Department of Corrections grievance procedures, a prisoner must raise each of his claims

for the first time at Step I.    *Burton v. Jones*, 321 F.3d 569, 574 (6th Cir. 2003).  However, where

a prisoner has set forth a claim in his Step I grievance, he may present additional factual detail at

Steps II and III that clarify his allegations at Step I, as a means of justifying his appeal.  *Id.* Raising

allegations against a particular defendant for the first time at Step II or III is insufficient to

demonstrate exhaustion.  *Id.* at 576 n.4.  Plaintiff did not provide the Step I grievances, nor does he

allege who he named in the Step I grievances.  Accordingly, Plaintiff fails to demonstrate exhaustion

of these claims against any of the named Defendants.

Plaintiff does not allege or show that he filed any grievance whatsoever regarding his

claim of assault resulting from Defendant Smith's alleged offer to give inmate Ramone a better job

in Food Service if he would get Plaintiff "out of the way."  Plaintiff, therefore, failed to exhaust his

claim against Defendant Smith arising from the assault.

Because Plaintiff's complaint contains both exhausted and unexhausted claims, the

Court will dismiss his action pursuant to the "total exhaustion" rule.  Under the total exhaustion rule,

the presence of an unexhausted claim results in the dismissal of the entire action. Currently, a split

exists in this District concerning the validity of the "total exhaustion" interpretation of 42 U.S.C.

§ 1997e(a).  *Smeltzer v. Hook*, 235 F. Supp. 2d 736 (W.D. Mich. 2002) (applying total exhaustion

rule) (comparing *Keenan v. Twommy*, No. 1:97-cv-549 (W.D. Mich. July 29, 1999) (applying total

exhaustion rule) with *Jenkins v. Toombs*, 32 F. Supp. 2d 955 (W.D. Mich. 1999) (rejecting total

exhaustion rule).  In *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000), the Sixth Circuit

"reserve[d] to another day the question of whether 'exhausted claims' in a 'mixed complaint' should

be addressed when such claims would otherwise meet the pleading requirement or whether such

claims should be dismissed in their entirety."

In *Smeltzer*, the court noted that the total exhaustion rule is supported both by the

plain meaning of 42 U.S.C. § 1997e(a) and strong policy interests.  *Smeltzer*, 235 F. Supp. 2d at 743.

Section 1997e(a) provides, "No *action* shall be brought with respect to prison conditions under

section 1983 of this title . . . until such administrative remedies as are available are exhausted."

28 U.S.C. § 1997e(a).  As discussed in *Smeltzer*, Congress indicated that a prisoner is required to

exhaust all claims before his action may proceed by using the word "action" instead of "claim."

*Smeltzer*, 235 F. Supp. 2d at 744.

As noted by the court in *Smeltzer*, if Congress had intended to permit the piecemeal

adjudication of claims relating to prison conditions, the statute would have precluded the bringing

of unexhausted *claims* rather than *actions*.  235 F. Supp. 2d at 744 (emphasis in original).  Section

1997e(c)(1) provides that the district court shall dismiss any "action" which is frivolous, malicious,

or fails to state a claim.  In contrast, § 1997e(c)(2) provides that the district court may dismiss a

"claim" which is frivolous, malicious or fails to state a claim without first requiring exhaustion of

administrative remedies.  It is apparent that Congress realized that requiring dismissal without

prejudice under § 1997(a) might prevent a court from dismissing with prejudice for frivolousness or failure to state a claim.  Therefore, Section 1997e(c)(2) serves to reconcile § 1997(a) and § 1997(e)(1) by permitting a court to dismiss an unexhausted claim as frivolous, thus preventing an unexhausted claim from 'holding up' the dismissal of a frivolous action comprising otherwise exhausted claims." *Smeltzer*, 235 F. Supp. 2d at 744.

The total exhaustion rule also is supported by the general intent of the PLRA and other strong policy arguments.  Congress amended § 1997e(a) largely in response to concerns about the heavy volume of frivolous prison litigation in the federal courts.  *Smeltzer*, 235 F. Supp. 2d at 744 (citing *Alexander v. Hawk*, 159 F.3d 1321, 1326 n.11 (11th Cir. 1998) (citing 141 Cong. Rec. H14078-02, *H14105 (daily ed. Dec. 6, 1995)).  "Congress desired 'to wrest control of our prisons from the lawyers and the inmates and return that control to competent administrators appointed to look out for society's interests as well as the legitimate needs of prisoners.'" *Id.* (quoting 141 Cong. Rec. S14408-01, *S14418 (daily ed. Sept. 27, 1995)).

The total exhaustion rule advances the goals of the PLRA by discouraging frivolous prisoner litigation and conserving judicial resources.  *Smeltzer*, 235 F. Supp. 2d at 744-45.  The total exhaustion rule also discourages prisoners from bringing unexhausted or frivolous claims.  If only the unexhausted claims were dismissed from a mixed complaint, there is nothing to deter prisoners from raising unexhausted claims indiscriminately.  Moreover, the assessment of a second filing fee after the prisoner has properly exhausted all of his claims also serves as a deterrent against filing unexhausted or frivolous claims.  *Smeltzer*, 235 F. Supp. 2d at 745.

In addition, the court in *Smeltzer* held that application of a total exhaustion rule in the civil rights context promotes comity in much the same way as in the habeas corpus context, where the total exhaustion rule is clearly established.  235 F. Supp. 2d at 745.  Regarding the amendments

by the PLRA to § 1997e(a), the *Smeltzer* court quoted *Brown v. Toombs*, 139 F.3d at 1103, as

follows:

> The new statute has extensive benefits.  It recognizes that it is
> difficult to explain why we require full exhaustion in habeas corpus
> cases involving life and liberty, but allow direct access in prison cases
> under § 1983. As Justice Stewart stated in *Preiser v. Rodriguez*, 411
> U.S. 475, 491-92 (1973):
>
> > Since these internal problems of state prisons involve
> > issues so peculiarly within state authority and
> > expertise, the states have an important interest in not
> > being bypassed in the correction of these problems.
> > Moreover, because most potential litigation involving
> > state prisoners arises on a day to day basis, it is most
> > efficient and properly handled by the state
> > administrative bodies and the state courts, which are
> > for the most part, familiar with the grievances of state
> > prisoners and in a better physical and practical
> > position to deal with these grievances.

*Smeltzer*, 235 F. Supp. 2d at 745.

As concluded by the court in *Smeltzer*, the principles of comity require that prison

officials have a full opportunity to address claims raised by prisoners before they are brought to

federal court.  "By requiring total exhaustion, the federal courts not only will promote comity, but

also will reap the benefits of 'more focused complaints and more developed evidentiary records.'"

*Smeltzer*, 235 F. Supp. 2d at 745 (citing *Rivera v. Whitman*, 161 F. Supp. 2d 337, 343 (D.N.J. 2001).

Since Smeltzer was decided, two federal circuit courts have adopted the total

exhaustion rule.  *See Ross v. County of Bernalillo*, 365 F.3d 1181, 1189 (10th Cir. 2004); *Graves

v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000); *but see Ortiz v. McBride*, 380 F.3d 649, 663 (2d Cir.

2004), *pet. for cert. filed*, No. 04-668 (Nov. 16, 2004).  Moreover, in several unpublished decisions,

the Sixth Circuit has affirmed the dismissal pursuant to § 1997e(a) for lack of total exhaustion.  *See

Smith v. Hoffman*, No. 03-5034, 2003 WL 22114011, at *1 (6th Cir. Sept. 9, 2003); *Shorter v.*

*Campbell*, No. 02-3812, 2003 WL 463480, at *2 (6th Cir. Feb. 20, 2003); *Storey v. Hutchinson*, No.

02-5980, 2003 WL 179999, at *1 (6th Cir. Jan. 24, 2003), *cert. denied*, 540 U.S. 1113 (2004); *See*

*Kemp v. Jones*, No. 01-2744, 2002 WL 1808416, at *1 (6th Cir. Aug. 6, 2002); *Mack v. DeWitt*, No.

01-4163, 2002 WL 847991, at *1 (6th Cir. Apr. 30, 2002); *Julian-Bey v. Crowley*, No. 00-2313, 2001

WL 1555950 (6th Cir. Dec. 3, 2001); *Keenan v. Twommy*, No. 99-2030, 2000 WL 1175621, at *1

(6th Cir. Aug. 10, 2000).

Because Plaintiff's complaint contains exhausted claims and unexhausted claims, the

Court finds that he failed to exhaust his administrative remedies as required by § 1997e(a).

Dismissal of this action without prejudice is appropriate when a prisoner has failed to show that he

exhausted available administrative remedies.  *See Freeman v. Francis*, 196 F.3d 641, 645 (1999);

*Brown*, 139 F.3d at 1104; *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997).  Dismissal for

failing to exhaust available administrative remedies does not relieve a plaintiff from payment of the

civil action filing fee.  *Omar v. Lesza*, No. 97 C 5817, 1997 WL 534361, at *1 (N.D. Ill. Aug. 26,

1997).  Accordingly, the Court will dismiss Plaintiff's action without prejudice.

### Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the

Court will dismiss Plaintiff's action without prejudice because he has failed to show exhaustion as

required by 42 U.S.C. § 1997e(a).

The Court must next decide whether an appeal of this action would be in good faith

within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611

(6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no

good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $255

appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is

barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is

barred, he will be required to pay the $255 appellate filing fee in one lump sum.

A Judgment consistent with this Opinion will be entered.

Dated:  April 25, 2005                          /s/   David W. McKeague
                                                David W. McKeague
                                                United Stated District Judge